1  EUGENE G. IREDALE, SBN 75292
2  JULIA YOO, SBN 231163
   GRACE JUN, SBN 287973
3  IREDALE & YOO, APC
   105 West F Street, Fourth Floor
4  San Diego, CA 92101-6036
   TEL: (619) 233-1525   FAX: (619) 233-3221
5

6
                    UNITED STATES DISTRICT COURT
7            THE SOUTHERN DISTRICT OF CALIFORNIA
                      (Hon. M. James Lorenz)
8

9  THE ESTATE OF FRANCISCO              ) Case No. 15-cv-02241-L-WVG
   MANUEL CESENA, by and through its    )
10 successor-in-interest, JONATHAN      ) **SECOND AMENDED COMPLAINT**
   JOSE TRINIDAD CESENA; MANUEL         ) **FOR**:
11 SALVADOR CESENA; TRINIDAD            )
   CESENA; FRANCISCO ARMANDO            )
12 CESENA by and through his guardian   ) (1)   *Bivens*: Wrongful Death;
   *ad litem* CORINA AVILA;             ) (2)   *Bivens*: Failure to Properly
13 JONATHAN JOSE TRINIDAD               )       Supervise and Failure to
   CESENA; and LUCITANIA JULIANA        )       Intervene;
14 CESENA                               ) (3)   *Bivens*: Right of Association;
                                        ) (4)   *Bivens*: Excessive Force in
15           Plaintiffs,                )       Violation of the Fourth
                                        )       Amendment;
16      v.                              ) (5)   *Bivens*: Failure to Properly Train;
                                        ) (6)   *Bivens*: Deliberate Indifference to
17                                      )       Serious Medical Need;
   STEPHEN HUDSON; CLARENCE             ) (7)   *FTCA*: Wrongful Death (CCP
18 LABAK; BRADLEY MARTIN;               )       377.60);
   MICHAEL KUPIEC; NINA                 ) (8)   *FTCA*: Assault and Battery;
19 SIGNORELLO; JEFF SAVAGE;             ) (9)   *FTCA*: Intentional Infliction of
   CARY RODRIGUEZ; JAMES                )       Emotional Distress;
20 CARRAWAY; DELLANIRA                  ) (10)  *FTCA*: Negligence;
   MONROY; UNITED STATES OF             ) (11)  *FTCA*: California Civil Code §
21 AMERICA and                         )       52.1
   DOES 2-20,                           )
22                                      )
                                        )
23                                      )
            Defendants.                 )
24                                      ) JURY TRIAL IS HEREBY
                                        ) DEMANDED
25                                      )
                                        )
26                                      )

27

28

COME NOW, the ESTATE OF FRANCISCO MANUEL CESENA by and through its successor in interest, JONATHAN JOSE TRINIDAD CESENA; MANUEL SALVADOR CESENA and TRINIDAD CESENA; FRANCISCO ARMANDO CESENA by and through his guardian *ad litem* CORINA AVILA; JONATHAN JOSE TRINIDAD CESENA; and LUCITANIA JULIANA CESENA, and allege and complain as follows:

## I.
## INTRODUCTION

On Christmas Eve, 2014, in the mid-afternoon, decedent Francisco Manuel Cesena, a United States citizen, entered the U.S. from Mexico at the San Ysidro Port of Entry. At the pedestrian primary inspection, he provided his true name and date of birth, knowing that a parole violation warrant for failure to report to his parole officer was outstanding against him. He was escorted to a secured office at the Port. He remained there for several hours, quiet and compliant.

At approximately 6:45 p.m., he suddenly rose from where he was sitting, leaped over a gate, and swung at a CBP officer named Nava. Within seconds, three other CBP agents swarmed him. They pinned him to the floor. A struggle ensued, during which over thirty CBP agents arrived at the scene. Over twelve agents grappled, at one point or another, with Mr. Cesena. He cried out on several occasions, "I can't breathe."

CBP personnel handcuffed Mr. Cesena, restrained him and shackled his legs. CBP agents placed him on his stomach. After the protracted and strenuous struggle, Francisco Cesena stopped moving and became completely still. Instead of turning him to his side, monitoring his breathing and physical state, and removing a mask that defendant Nina Signorello had placed over his nose and mouth, the defendants in this case restrained him in a prone position. They kept him face-down, with a mask obstructing his nose and mouth, without properly monitoring his breathing, consciousness, pulse and physical condition. As a result

1

of this continued force, after he had already been restrained and had ceased all resistance,  Francisco Cesena died.

## II.
## GENERAL ALLEGATIONS

1.     Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 (Federal Question) and 28 U.S.C. §1346(b)(1), et. seq.  (United States as Defendant).

2.     Venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiffs' claims occurred in San Diego, California, within the Southern District.

3.     This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).

4.     Plaintiffs' claims under 28 U.S.C. §§ 1346, and 2671-2680 (Federal Tort Claims Act) were timely filed on March 13, 2015.   The claims were formally denied on September 17, 2015.

5.     The individual defendants named were law enforcement agents and employees of the United States.  They were acting within the scope of their employment at all times relevant to this complaint.

6.     At all times relevant to this complaint, Customs and Border Protection was a part of the Department of Homeland Security, which is a federal agency of defendant UNITED STATES OF AMERICA and was operating in San Diego County, California.

7.     Plaintiffs are truly ignorant of the true names and capacities of DOES 2 through 20, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities and the facts giving rise to their liability have been ascertained.

8.     These defendants were agents, servants and employees of each of the other named defendants and were acting at all times within the full course and

2

1  scope of their agency and employment, with the full knowledge and consent, either

2  expressed or implied, of their principal and/or employer and each of the other

3  named defendants. Each of the defendants had approved or ratified the actions of

4  the other defendants, thereby making the currently named defendants liable for the

5  acts and/or omissions of their agents, servants and/or employees.

6      9.    If it is certified by the Attorney General that the defendants

7  were acting within the scope of their employment at the time of the incident, this

8  action should be deemed one against the United States as to the Federal Tort

9  Claims Act causes of action, and the United States should be substituted as the only

10  defendant in those causes of action (the seventh through the eleventh).

11

### III.
### PARTIES

13     10.   Decedent Francisco Manuel Cesena died intestate.

14     11.   Plaintiff Jonathan Jose Cesena is a successor-in-interest to the Estate,

15  and is the eldest of his surviving children.

16     12.   Plaintiff Manuel Salvador Cesena is decedent's father, and Plaintiff

17  Trinidad Cesena is his mother.

18     13.   Plaintiff Francisco Armando Cesena is Francisco Cesena's minor child.

19     14.   Corina Avila is Francisco Armando Cesena's mother.  She has agreed to

20  act as his guardian *ad litem* in the action.

21     15.   Plaintiff Jonathan Jose Trinidad Cesena is Francisco Cesena's son.

22     16.   Plaintiff Lucitania Juliana Cesena is Francisco Cesena's daughter.

23     17.   Decedent Francisco Cesena had no spouse at the time of his death.

24     18.   Francisco Cesena's heirs under California law are his surviving

25  children: Jonathan Jose, Lucitania Juliana, and Francisco Armando Cesena.

26     19.   Defendant Stephen Hudson is a CBP Officer.

27     20.   Defendant Clarence Labak is a CBP Officer.

28

21.   Defendant Bradley Martin is a CBP Officer.

22.   Defendant Michael Kupiec is a CBP Officer.

23.   Defendant Nina Signorello is a CBP Officer.  Signorello was identified as Doe 1 in the First Amended Complaint.

24.   Defendant Jeff Savage is the Branch Chief of the CBP Office of Field Operations ("OFO").

25.   Defendant Cary Rodriguez is a Watch Commander for CBP.

26.   Defendant James Carraway is a supervisory CBP Officer.

27.   Defendant Dellanira Monroy is a supervisory CBP Officer.

## IV.
## FACTS

28.   On 24 December, 2014, Francisco Manuel Cesena entered the United States from Mexico at the Port of Entry in San Ysidro.

29.   Mr. Cesena had gone to Mexico to work with his father for several days.

30.   Francisco Cesena was on parole, and was aware that an arrest warrant was outstanding because he had failed to meet with his parole officer.

31.   Francisco Cesena had a substance abuse problem.

32.   Mr. Cesena went to the primary inspection area, and stated that he was a U.S. citizen.

33.   He provided the CBP officer at the Pedestrian Primary with his true name and date of birth.

34.   At approximately 3:00 p.m., after the warrant was discovered through computer records, CBP officials detained Francisco Cesena.

35.   Francisco Cesena was cooperative.

36.   An officer escorted him to the secondary inspection area for processing.

37.   At Secondary, officials searched Francisco Cesena, and seized a small amount of heroin and two syringes.

4

38.   Mr. Cesena remained under detention within the secondary inspection area for over three and one half hours.

39.   At 6:48:50[1], Francisco Cesena rose from where he was sitting and ran toward a work station in Secondary Inspection.

40.   Francisco Cessna leapt over a swinging gate and landed in the work area.

41.   Francisco Cesena then swung twice at CBP Officer Nava.

42.   Another CBP officer, Flores, pushed Mr. Cesena from behind and Francisco fell to the floor.

43.   He landed on his left side.

44.   Officers Nava, Medina, Signorello and Supervisor Carraway restrained Francisco Cesena using their body weight.

45.   Between 6:49:17 and 6:50:34, approximately eighteen to twenty other personnel arrived in the area.

46.   More than thirty CBP personnel ultimately responded to the area.

47.   For approximately nine minutes a struggle ensued, during which multiple agents used their body weight, blows, pain compliance techniques, and holds to restrain Francisco Cesena.

48.   At 6:51:20, defendant Stephen Hudson fired two Taser darts into Mr. Cessna's upper back.

49.   Hudson then discharged the Taser at least three additional times within the next twenty-eight seconds.

50.   At least two of these charges were in the "drive-stun" mode.

51.   The dart mode involves the discharge of electricity though the metal barbs which were shot into the body of Mr. Cesena.

52.   This technique results in neuromuscular incapacitation – the inability to

---

[1] The times are drawn from a video of the events maintained by the CBP. The reference is to the hour, minute and second respectively.

move.

53.     The "drive-stun" mode involves applying the Taser prongs directly to the skin during discharge, resulting in excruciating pain.

54.     Hudson knew CBP policy limited Taser use to three applications.

55.     Nonetheless, he applied four shocks.

56.     Hudson had been certified in the use of the Taser, and had been specifically warned about the dangers of Taser use, as set forth by Taser International in its product warnings.

57.     Those warnings, in which Hudson had been instructed and of which he was aware, included the following:

a.     Minimize Repeated, Continuous, or Simultaneous Exposures.
Reasonable efforts should be made to minimize the number of ECD (Taser) exposures.  ECD Users should use the lowest number of ECD exposures that are objectively reasonable to accomplish lawful objectives and should reassess the subject's resistance level before initiating or continuing the exposure.

b.     Incapacitation, Falling, and Startle Hazard.
ECD may cause muscular contraction, Neuro Muscular Incapacitation ("NMI"), startling, and falling, which could result in death or serious injury.

c.     Physiologic and Metabolic Effects.
Taser use causes physiologic and/or metabolic effects that may increase the risk of death of serious injury.  These effects include changes in blood chemistry, blood pressure, respiration, heart rate and rhythm, and adrenaline and stress hormones, among others.

Some individuals may be particularly susceptible to the effects of Taser use.  These susceptible individuals include the elderly, those with heart

conditions, asthma or other pulmonary conditions, and people suffering from excited delirium, profound agitation, severe exhaustion, drug intoxication or chronic drug abuse, and/or over-exertion from physical struggle.  In a physiologically or metabolically compromised person, any physiologic or metabolic change may cause or contribute to sudden death.

d.    Physiologically or Metabolically Compromised Persons.

Law enforcement personnel are called upon to deal with persons in crises who are often physiologically or metabolically compromised and may be susceptible to death.  The factors that may increase susceptibility have not been fully characterized but may include: a hypersympathetic state, autonomic dysregulation, capture myopathy, hyperthermia, altered electrolytes, severe acidosis, cardiac arrest, drug or alcohol effects (toxic withdrawal, sensitization to arrhythmias, etc), alterations in brain function (agitated or excited delirium), cardiac disease, pulmonary disease, sickle cell disease, and other pathologic conditions.  These risks may exist prior to, during, or after law enforcement intervention or ECD use, and the subject may already be at risk of death or serious injury as a result of pre-existing conditions, individual susceptibility, or other factors.  In a physiologically or metabolically compromised person any physiologic or metabolic change may cause or contribute to death or serious injury.

e.    Cumulative Effects.

CEW exposure causes certain effects, including physiologic and metabolic changes, stress, and pain.  In some persons, the risk of death or serious injury may increase with cumulative CEW exposure. Repeated, prolonged, or continuous CEW applications may contribute to cumulative exhaustion, stress, cardiac, physiologic, metabolic,

7

respiratory, and associated medical risks which could increase the risk of death or serious injury.  Minimize repeated, continuous, or simultaneous exposures.

    f.   <u>Stress and Pain.</u>

Taser use, anticipation of use, or response to use can cause startle, panic, fear, anger, rage, temporary discomfort, pain, or stress which may be injurious or fatal to some people.

    g.   <u>Drive Stun Mode is for Pain Compliance Only.</u>

The use of a handheld Taser in drive-stun mode is painful, but generally does not cause incapacitation.  Drive-stun use may not be effective on emotionally disturbed persons or others who may not respond to pain to a mind-body disconnect.  Avoid using repeated drive-stuns on such individuals if compliance is not achieved.

58.   Hudson had been instructed during his CBP Taser certification training that his obligation after using the Taser required that he closely monitor the breathing, pulse, skin color and physical condition of the person who had been Tased.

59.   Hudson had been trained that the use of the Taser predisposed the person Tased to a higher risk of positional asphyxia.

60.   Positional asphyxia is the loss of ability to breathe resulting from a person being subjected to stress while the person is face down and restrained, and is in a position which places pressure on the diaphragm resulting in apnea and unconsciousness.

61.   Hudson was aware that a person who is Tased while in a restrained, face-down position, must be moved onto their side to alleviate pressure and ensure that breathing is unimpeded.

62.   This side position is known as the "recovery position."

63.   At 6:56:45, after Mr. Cesena had been handcuffed, CBP officers placed

his feet in shackles, which immobilized his legs.

64.    Shortly thereafter, Mr. Cesena stopped moving.

65.    During the struggle, Mr. Cesena had cried out "I can't breathe" on multiple occasions.

66.    Despite Mr. Cesena's cries, defendant Nina Signorello placed a mask over Mr. Cesena's nose and mouth, inhibiting his ability to breathe.

67.    Agents completely restrained Francisco Cesena by handcuffs, leg shackles and a mask.

68.    For a period of seventy-five seconds, after complete restraint, Francisco Cesena was able to shift his shoulders slightly and elevate his head marginally.

69.    Mr. Cesena engaged in these slight movements; then he stopped moving.

70.    Mr. Cesena became silent.

71.    For a period of over seven minutes, between approximately 6:58:30 and 7:05:47, Mr. Cesena was surrounded by multiple trained CBP agents, supervisors and personnel.

72.    Defendant Signorello, having placed a face mask on decedent, after he had repeated several times in her presence that he could not breathe, kept the face mask on his person, and did not remove it.  Signorello placed pressure on Mr. Cesena's back, which had the effect of inhibiting his ability to breathe.  After Mr. Cesena lapsed into unconsciousness, Signorello, among other defendants, participated in taking photos of his back.  Signorello did not give CPR to Mr. Cesena, until he had ceased breathing for several minutes.

73.    During this time he stopped breathing and suffered cardiac arrest.

74.    None of the officers monitored his breathing.

75.    For at least six minutes and thirty seconds after Mr. Cesena became completely still, no one monitored his pulse.

76.    Despite specific training in the necessity to monitor pulse, breathing

9

1   and physical condition, Hudson continued the forcible restraint of Mr. Cesena in a
2   face-down position.

3       77.   Even though he witnessed Mr. Cesena's hands turn blue from lack of
4   oxygen, Hudson did not turn Mr. Cesena on his side; summon a medic or
5   emergency care; nor did he administer first aid.

6                                    **Excessive Force**

7       78.   The excessive force which resulted in the death of Francisco Cesena
8   was Hudson's excessive and unnecessary use of the Taser, and the defendants'
9   continued forcible restraint of Francisco Cesena while he was handcuffed, shackled
10  and masked, in a prone, face-down position.

11      79.   This forcible restraint occurred *after* Francisco Cesena had ceased all
12  resistance, and *after* he no longer represented a threat of any kind.

13      80.   Hudson's repeated use of the Taser was in violation of CBP policy.

14      81.   During the struggle, Francisco Cesena was struggling to breathe and
15  felt panic.

16      82.   Hudson's use of the Taser inflicted pain which resulted in involuntary
17  movement and yet more panic in Francisco Cesena.

18      83.   The repeated Taser use was unnecessary and caused the needless
19  infliction of pain and fear on decedent, and the consequent prolongation of the
20  struggle.

21      84.   After Cesena had stopped struggling, Hudson continued the forcible
22  prone, face-down, shackled restraint of Francisco, in violation of his training, CBP
23  policy, and the Fourth Amendment proscription on the use of excessive force.

24      85.   He struggled for more than nine minutes as multiple agents applied
25  force to restrain him.

26      86.   Hudson and the other defendants were angry because of Mr. Cesena's
27  conduct.

28      87.   Their actions in forcing the continued, face-down and dangerous

restraint, without monitoring, without medical care, despite the sudden and shocking loss of consciousness, sound and movement in the shackled decedent, was in reckless disregard of Mr. Cesena's Fourth Amendment rights.

88.   Defendants continued the forcible prone restraint of a person whom they knew was at special risk for death, a person likely under the influence of drugs, who had engaged in a protracted struggle, who was restrained, face-down, masked and who had complained of difficulty in breathing.

89.   Instead of acting to alleviate the effects of positional restraint, Hudson photographed the Taser burns and tattoos on Mr. Cesena's back, as Mr. Cesena ceased moving and breathing, suffered cardiac arrest, and died.

90.   CBP Officer Clarence Labak was the person specifically charged with insuring the health and safety of both the officers and Mr. Cesena.

91.   Labak is a designated medical first responder with special training.

92.   Labak arrived and saw Mr. Cesena handcuffed, shackled, still and silent.

93.   For several minutes, Labak did nothing to change Mr. Cesena's position, remove the mask which obstructed his breathing, or properly monitor his pulse, breathing or skin tone.

94.   Labak was involved in allowing the continued prone restraint, and only turned Francisco over after hearing another agent yell that Mr. Cesena was not breathing.

95.   CBP Officer Michael Kupiec participated in the struggle.

96.   Kupiec, knowing that Mr. Cesena had stopped resisting, continued to hold him in the prone, face-down position by restraining his legs.

97.   CBP Officer Bradley Martin, knowing that Mr. Cesena had been Tased, handcuffed, shackled and masked, restrained his movement by standing with his boot on the ankle chains that bound Mr. Cesena's feet.

98.   Branch Chief Jeff Savage was in a supervisory position.  Savage

11

observed the struggle, and heard Francisco Cesena's screams.

99.  Savage requested a pair of shackles ("leg irons") be brought to the scene.

100.  Savage witnessed Mr. Cesena being completely restrained.

101.  Savage saw Mr. Cesena in a prone, restrained, face-down position and issued commands to have Mr. Cesena's body photographed as he lay motionless on the floor.

102.  Savage took no action to order that Mr. Cesena's pulse and breathing be monitored or that he be placed in a safe position.

103.  Watch Commander Cary Rodriguez witnessed the struggle.

104.  Rodriguez witnessed Hudson use the Taser.

105.  Rodriguez witnessed Mr. Cesena unmoving and prone.

106.  Rodriguez took no action to ensure that Mr. Cesena be moved to a safer restraint position, or that the mask be removed.

107.  Supervisory CBP Agent James Carraway participated in restraining and handcuffing Mr. Cesena.

108.  Carraway was aware of the Taser use.

109.  Carraway participated in the restraining of Mr. Cesena.

110.  Carraway witnessed Mr. Cesena supine, shackled, masked and unmoving, but took no action to change his position.

111.  Supervisory CBP Officer Dellanira Monroy, like the other supervisory personnel, witnessed the struggle and saw that Mr. Cesena was restrained and unresisting.

112.  Monroy knew that Mr. Cesena was in a physically compromised state, but did nothing to ensure that he be placed in a position to prevent cardiac arrest and positional asphyxia.

## HOSPITAL RECORDS

113.  Sharp Chula Vista Medical Center's emergency room records reflect

that Francisco Cesena had no pulse upon arrival at the hospital, and that medical personnel were unable to revive him.

## AUTOPSY EXAMINATION RESULTS

114. The San Diego County Office of the Medical Examiner conducted an autopsy.

115. That Office found the cause of death to be cardiopulmonary arrest due to prone restraint with the use of conducted electrical weapons while intoxicated with methamphetamine and heroin.

116. The Office of Medical Examiner found the manner of death to be homicide.

117. The external examination of the body revealed "at least seven paired punctate injuries, ranging in distance from 1/2 inch apart to 1 and 1/4 inches apart."

118. These injuries were located on Mr. Cesena's back.

119. There were multiple anterior rib fractures of his right side (second through seventh and ninth ribs), and on his left side (second through ninth ribs).

## TASER DOWNLOAD RECORDS

120. The download of Hudson's Taser showed that he fired it at 18:51:20 for five seconds; fired a second time at 18:51:27 for five seconds; fired a third time at 18:51:38 for five seconds; and finally discharged it yet a fourth time at 18:51:43 for five seconds.

## FIRST CAUSE OF ACTION
### (Wrongful Death: *Bivens* Action)
### [By All Plaintiffs Against All Defendants, Except for the United States]

121. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

122. Defendants, acting under color of federal law, committed wrongful acts which proximately caused the death of Francisco Cesena.  They deprived Francisco Cesena of his rights under the United States Constitution to be free from the use of

excessive force and punishment without due process.

123. Their acts and failures to act resulted in the death of Francisco Cesena.

124. By their conduct, the defendants violated Francisco Cesena's constitutional rights to be free from excessive force, and from punishment without due process of law: rights guaranteed under the Fourth and Fifth Amendments.

125. The force used was unreasonable and performed with a deliberate indifference to the safety and welfare of Francisco Cesena.

126. The conduct resulted in a deprivation of Plaintiff's rights alleged above which has legally, proximately, foreseeably and actually caused Plaintiff to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

127. The conduct was done in deliberate or reckless disregard of decedent's Constitutionally protected rights; justifying the award of exemplary damages against defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.

## SECOND CAUSE OF ACTION
### (Failure to Properly Supervise and Failure to Intervene: *Bivens* Action)
### [By All Plaintiffs Against All Defendants, Except for the United States]

128. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

129. Supervisory defendants Savage, Rodriguez, Carraway and Monroy had a duty to Plaintiffs to properly supervise employee officers who hold the power, authority, insignia, equipment and arms entrusted to them.

130. The non-supervisory defendants, including Hudson, Labak, Martin and Kupiec, who witnessed the use of excessive force, had a duty to intervene to prevent the use of excessive force against Francisco Cesena.

131. Law enforcement officers who have an opportunity to prevent a fellow officer from violating a citizen's Constitutional rights have a duty to intervene to

protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

132. Defendants witnessed the Tasing, restraint and excessive force employed against Francisco Cesena after he ceased resisting.

133. Defendants had sufficient time and opportunity to intervene.

134. Defendants failed to intervene despite their legal obligation to do so.

135. This resulted in damage, including pain, suffering and death.

136. In failing to intervene, these defendants acted with, at minimum, deliberate indifference to the Constitutional violations they witnessed.

137. Defendants were deliberately indifferent to the excessive force used, and failed to prevent the infliction of fatal injuries.

138. As a result of the Defendants' failure to properly supervise or intervene, decedent suffered pain, suffering and ultimately, death.

139. The conduct alleged herein violated Francisco Cesena's rights alleged above thereby resulting in a deprivation of Plaintiff's rights alleged above which has legally, proximately, foreseeably and actually caused Plaintiff to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

**THIRD CAUSE OF ACTION**
**(Right of Association: *Bivens* Action)**
**[By MANUEL SALVADOR CESENA, TRINIDAD CESENA, FRANCISCO ARMANDO CESENA, JONATHAN JOSE TRINIDAD CESENA, and LUCITANIA JULIANA CESENA against All Defendants Except for the United States]**

140. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

141. Defendants deprived Francisco Cesena of his rights under the United States Constitution to be free from the use of excessive force by law enforcement and punishment without due process.

142. By these acts, the defendants violated Francisco Cesena's

15

constitutional rights to be free from excessive force and punishment without due process of law.  The improper and unjustified use of force used was objectively unreasonable and excessive and performed with a deliberate indifference to the safety and welfare of Francisco Cesena; alternatively, it was inflicted with malice and in excess of any legitimate use of force for a law enforcement purpose.

143. Defendants' conduct violated the Constitutional rights of Mr. Cesena's three children,  Francisco Armando Cesena, Jonathan Jose Trinidad Cesena and Lucitania Juliana Cesena to the familial love, society and companionship of their father, Francisco Cesena, protected by the First and Fifth Amendments.

144. Defendants' conduct violated the Constitutional rights of Mr. Cesena's parents, Manuel Salvado Cesena and Trinidad Cesena, to the familial love, society and companionship of their son, Francisco Cesena, protected by the First and Fifth Amendments.

145. Defendants' conduct violated Plaintiffs' associational rights and has actually caused Plaintiffs to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

146. The conduct alleged herein was done in deliberate or reckless disregard of decedent's and plaintiffs' Constitutionally protected right to familial association justifying the award of exemplary damages against defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.

147. Defendants' conduct violated the Constitutional rights of Francisco Cesena's parents and children to his society and companionship.

148. The conduct alleged herein violated Francisco Cesena's rights alleged above thereby resulting in a deprivation of Plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused Plaintiffs to suffer emotional distress, pain and suffering, and further damages according to proof at

1    the time of trial.

2                    **FOURTH CAUSE OF ACTION**
          **(Excessive Force in Violation of the Fourth Amendment: *Bivens*)**
3    **[Estate of Francisco Cesena against All Defendants Except the United States]**

4         149. Plaintiffs reallege all prior paragraphs of this complaint and incorporate

5    the same herein by this reference.

6         150. Defendants used excessive force against Francisco Cesena.

7         151. The use of excessive force by these defendants was clearly in violation

8    of the Fourth Amendment to the U.S. Constitution, and was in violation of clearly

9    established law.

10        152. As a result of these defendants' use of excessive force, Plaintiffs

11   suffered damages as alleged in this complaint.

12                    **FIFTH CAUSE OF ACTION**
              **(Failure to Properly Train: *Bivens*)**
13                **[By all Plaintiffs Against Does 2-6]**

14        153. Plaintiffs reallege all prior paragraphs of this complaint and incorporate

15   the same herein by this reference.

16        154. The Port of Entry at San Ysidro is the busiest land port of entry in the

17   world.

18        155. Millions of persons cross the border though this port of entry annually.

19        156. CBP has invested Does 2-6 with the responsibility of training CBP

20   employees in the proper use of force, and the avoidance of excessive force.

21        157. Multiple people at the Port of Entry facility have died as a result of

22   positional asphyxia, and cardiac arrest attendant to the use of the Taser, coupled

23   with drug intoxication and the effects of struggle.

24        158. Does 2-6 had a constitutional responsibility to ensure that CBP

25   personnel are trained to avoid the excessive use of force.

26        159. Does 2-6 were responsible for promulgating rules and providing

27   instruction to CBP officers.

28        160. These rules require that after an assaultive and/or resistive subject is

restrained, with or without the use of Taser, the CBP officers ensure that the restrained person not suffer a needless death.

161. The rules to prevent needless and excessive force include:

    a.  A restrained person should be moved to his side, into the recovery position, especially after a prolonged struggle;

    b.  Overuse of the Taser on a physically or metabolically challenged person should be avoided;

    c.  The use of force involved in a prone restraint requires vigilance and the close monitoring of the restrained person's breathing, pulse, skin tone and physical condition;

    d.  Medical care should be provided immediately to a Tased person.

162. Does 2-6 failed to promulgate the rules necessary to properly train CBP employees in the proper use of force.

163. Does 2-6 were deliberately indifferent to the harms caused by their constitutionally violative failures.

164. The failure to promulgate rules on the use of force and to properly train CBP personnel caused the harms alleged in this complaint.

### SIXTH CAUSE OF ACTION
**(Deliberate Indifference to Serious Medical Need: *Bivens*)**
**[By All Plaintiffs Against All Defendants Except the United States]**

165. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

166. Defendants violated Francisco Cesena's Constitutional right to medical care by deliberate indifference to a serious medical need.

167. Defendants knew that Mr. Cesena had a serious medical need.

168. Despite their knowledge that Francisco Cesena had cried out that he could not breathe; despite his restraint in a prone position; despite his having fallen completely silent; despite his lack of any movement; despite his having been

repeatedly Tased; despite his having engaged in a protracted struggle; defendants were deliberately indifferent to his serious medical need for immediate.

169. The deliberate indifference of defendants cause the harms as set forth herein.

### SEVENTH CAUSE OF ACTION
### (FTCA: Wrongful Death: CCP 377.60)
### [By the Three Surviving Children Against All Defendants]

170. Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference

171. Francisco Cesena's death was caused, in whole or part, by the conduct of the defendants, who owed decedent and plaintiffs a duty to act without causing an unreasonable risk of harm or death.

172. Defendants acted intentionally and/or negligently in causing the death of Francisco Cesena.

173.  Francisco Cesena is survived by his children, Francisco Armando Cesena, Jonathan Jose Trinidad Cesena, and Lucitania Juliana Cesena.

174. Damages have resulted from Francisco Cesena's death including but not limited to loss of support, services, and funeral expenses.

175. If it is determined by the Attorney General that the Doe employees were acting within the scope of their employment at the time of the incident, this cause of action will be deemed one against the United States, and the United States will be substituted as the only defendant in this and the other FTCA causes of action.

### EIGHTH CAUSE OF ACTION
### (FTCA: Assault and Battery)
### [By the Estate of Francisco Cesena Against All Defendants]

176. Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

177. The Defendants, and each of them, acted with an intent to cause harmful or offensive contact with the person of Francisco Cesena and the intended

harmful or offensive contact did in fact occur.

178. The harmful or offensive contact was not privileged nor consented to and was excessive, unreasonable and done with deliberate indifference to the rights and safety of Francisco Cesena, and was done with the intent to inflict punishment above and beyond the reason for using force in the first place.

179. As a result of the Defendants' intent to cause harmful or offensive contact with the person of Francisco Cesena, and the fact that the intended harmful or offensive contact did in fact occur, decedent Francisco Cesena suffered damages according to proof at the time of trial.

### NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### [By the Estate of Francisco Cesena Against All Defendants]

180. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

181. By engaging in the acts alleged herein, the defendants engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Francisco Cesena to suffer emotional distress.

182. As a direct, proximate and foreseeable result, Francisco Cesena suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiffs.

### TENTH CAUSE OF ACTION
### (FTCA: Negligence)
### [By All Plaintiffs Against All Defendants]

183.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

184.  Defendants had a duty to Plaintiffs to act with ordinary care and prudence so as not to cause harm or injury to Francisco Cesena.

185. Defendants  improperly, negligently, wrongfully, and recklessly caused the excessive restraint and death of Francisco Cesena.

186. Defendants improperly, negligently, wrongfully, and recklessly failed to

1  render assistance for seven minutes when Francisco Cesena was on the floor,
2  handcuffed, shackled, masked, face-down and unable to breathe.

3      187. The supervisory Defendants improperly, negligently, wrongfully, and
4  recklessly failed to supervise their agents.

5      188. By engaging in the acts alleged herein, the Defendants failed to act with
6  ordinary care and breached their duty of care owed to Francisco Cesena.

7      189. As a direct, proximate and foreseeable result of the Defendants' breach
8  of their duty of care, Plaintiff suffered damages in an amount according to proof at
9  the time of trial.

10                    **ELEVENTH CAUSE OF ACTION**
              **(FTCA: California Civil Rights Violation (Section 52.1))**
11             **[By Estate of Francisco Cesena Against All Defendants]**

12      190. Plaintiffs reallege all prior paragraphs of this complaint and incorporate
13  the same herein.

14      191. Francisco Cesena had a firmly established right to be free from
15  excessive force under the Fourth Amendment to the United States Constitution, and
16  to be free from retaliation for expression of disapproval of police action under the
17  First Amendment.

18      192. Francisco Cesena had these same rights under the State Constitution of
19  California.

20      193. The California Legislature has declared that it violates the state civil
21  rights act (Civil Code § 52.1) for any person to interfere with the exercise or
22  enjoyment by any individual of his rights secured by the United States Constitution
23  or state or federal law.  This includes any interference with these rights by threats,
24  intimidation, coercion or attempted threats, intimidation or coercion.

25      194. The defendants interfered with Francisco Cesena's right to be free from
26  excessive force and from retaliation for the expression of disapproval of police
27  conduct.

28      195. This interference with Plaintiff's rights was perpetrated by the

defendants in violation of section 52.1 and decedent's rights under the First and Fourth Amendments.

196. Cal. Civ. Code § 43 provides an individual "the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."

197. Due to the violation of Plaintiff's rights by all Defendants, Plaintiff suffered economic damages and non-economic damages, including, but not limited to, emotional distress, pain and suffering, fear and death caused by the acts complained of herein according to proof at the time of trial.

198. Plaintiff is entitled to the statutory civil penalties set forth in Civil Code Section 52, attorneys' fees and costs of suit incurred herein.

WHEREFORE, Plaintiffs pray as follows:

1.    For general and special damages according to proof at the time of trial;

2.    For costs of suit and interest incurred herein;

3.    For punitive damages against individual defendants under *Bivens*; and

4.    Any other relief this court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs, pursuant to Rule 38 Federal Rules of Civil Procedure and the Seventh Amendment of the Constitution, demand a jury trial.

DATED:  February 13, 2017        Respectfully submitted,


                                /s/ *Eugene Iredale*
                                EUGENE IREDALE
                                JULIA YOO
                                GRACE JUN
                                Attorneys for Plaintiffs